BERRY & *a. v.* WHIDDEN & *a.*

A tenant in common, who occupies and receives the income of the whole land owned in common by permission of his cotenant, but without any agreement to account, is not liable to his cotenant for a share thereof when it does not appear that he has received in money more than his share of the rents and profits of the common estate.

A final decree in a bill in equity is conclusive upon all the parties in respect to all matters determined by it, and as to all matters which the parties were bound to litigate and bring to a decision.

BILL IN EQUITY, in which Charles W. Berry, Mary J. Pickering, and Emma F. Manson ask to have from Elizabeth A. Whidden and Frank L. Whidden an account of the income, rents, and profits of the farm situated in Newington, formerly belonging to William Berry, late of Newington, from the death of Joseph W. Whidden, October 24, 1875, to April 19, 1881, and that the defendants be decreed to pay three eighth parts thereof to the plaintiffs.   The facts are as follows:

The children of William Berry, on September 14, 1867, were Charles W. Berry, John G. Berry, Mary J. Pickering, Elizabeth A. Whidden, wife of Joseph W. Whidden, and a grandchild, Emma F. Manson, when he died, leaving a will, by which he made several bequests, &c., and then provided as follows: " I give and bequeath and devise unto Joseph W. Whidden, his heirs and assigns, forever, all the rest, residue, and remainder of my estate, real, personal, and mixed, wherever found or however situated, upon condition that he pay the foregoing legacies, my just debts and funeral charges, and yearly stipend to my said wife: *provided, however,* if my said sons John G. Berry and Charles W. Berry, now absent, shall return to Newington and pay all my just debts, foregoing legacies, and funeral charges, and assume the payment of the yearly stipend to my wife, as herein stipulated the said Whidden shall pay, then I give, bequeath, and devise the said residue and remainder of my real and personal estate, above conveyed to said Whidden, in equal shares to my said sons, their heirs and assigns, forever; and if one of my sons shall return to Newington, and shall pay one half of the said funeral charges, debts, and legacies, and assume payment of half the yearly stipend to my beloved wife, then I give, bequeath, and devise one undivided half of the same estate to said son, his heirs and assigns, forever.   And if said first returning son shall pay the whole of my debts, funeral charges, and legacies, and assume the payments of the yearly stipend aforesaid, then I give, bequeath, and devise one half of said estate to him, his heirs and assigns, forever, and the remaining half to him and his heirs and assigns, until my other son shall return to Newington and pay one

half of my said debts and legacies and funeral charges, and assume the payment of half the yearly stipend to my said wife ; when, and upon which condition, I give, bequeath, and devise that remaining half of said estate to the last returning son and his heirs and assigns forever. It being understood, and it is my will, that said Whidden is not to pay to my said son or sons anything for the use or income of said farm and estate during his occupancy, and that my said son or sons are not to pay interest to the said Whidden on my debts after my decease, or on the legacies which may have been paid out by said Whidden ; considering, while said Whidden holds and occupies said estate, he derives sufficient benefit from the same to cancel any interest to which he otherwise might be entitled. And that said Whidden is to have, hold, occupy, and improve the said estate, agreeable to the above bequest to him, until my said son or sons shall return to Newington and comply with the aforesaid conditions."

Whidden was appointed by the will executor thereof, and upon the death of William Berry accepted the trust, and took possession of the property named in the will, and remained in possession thereof until his death, October 24, 1875, leaving a will by which he devised to his wife, Elizabeth A. Whidden, all his real estate during her life, and all his personal property without limitation ; and, after death, he devised the farm formerly owned by William Berry to his son Frank L. Whidden,—the wood lot to go with the farm,—to have and to hold to him, his heirs and assigns, forever; and to his other two sons and his three daughters sundry legacies, to be paid by the said Frank L. Whidden.

John G. Berry and Charles W. Berry were living in the West at the time of their father's death. John came to Newington in March, 1869, and remained there until May 3, 1869, when he returned to Idaho, where he remained, and died there February 18, 1878. John never demanded of Whidden the possession of half of the farm or property in his lifetime, or of Mrs. Whidden, his executrix, since.

On September 9, 1878, the plaintiffs in the present suit brought their bill as heirs of John G. Berry, with Calvin Page, administrator of said John, against Mrs. Whidden and her children, praying for an account of certain money transactions between J. W. Whidden and John G. Berry, and claiming that John returned to Newington in 1869, complied with the terms of his father's will, and alleging that they, with Mrs. Whidden, were entitled to one half in common and undivided of the William Berry farm. *Page* v. *Whidden,* 59 N. H. 507. Such proceedings were had in that case, that, at the October term of the court, 1880, to wit, November 16, 1880, it was ordered, adjudged, and decreed by the court that the plaintiffs,—C. W. Berry, M. J. Pickering, E. F. Manson, with E. A., Whidden, as heirs of John G. Berry,—have possession of one common and undivided half of the farm which formerly belonged

to William Berry named in the plaintiffs' bill; and that a writ of possession issue therefor; and that Calvin Page, administrator of the estate of John G. Berry, have judgment against the estate of Joseph W. Whidden, deceased, of which said Elizabeth A. Whidden is executrix, for the sum of $257.38, with interest from Sept. 9, 1878, the date of filing the bill; and that the plaintiffs recover costs against the defendants.

Afterwards, to wit, on March 15, 1881, these plaintiffs filed in the probate court a petition for partition of the farm, upon which a committee was appointed, who after due hearing made a report to the court, and judgment was rendered thereon on the 19th day of April, 1881, by which three eighth parts of the farm were set off and assigned by metes and bounds to these plaintiffs, whereby the tenancy in common in the farm between these plaintiffs and defendants was severed and ceased.

The defendants, in their answer, allege that, by virtue of said decree, Page, as administrator as aforesaid, received in money $291.09; and that in making the decree the court considered all questions of interest and of the use and occupation of the land and farm, and that all the claims of the plaintiffs up to November 16, 1880, were included and merged in and barred by the same. They deny that Frank L. Whidden has ever held, occupied, carried on, or claimed any present interest in any part of the farm, except as servant of his mother, Elizabeth A. Whidden, or that he has received any income, rents, or profits from the farm from the death of J. W. Whidden up to April 19, 1881; but they say that Elizabeth has lived upon the farm since the decease of her husband, as she lawfully might, and taken care thereof, and paid the taxes, insurance, and other charges thereon, and kept the same in repair and good condition, and that it was needful for her so to do. And they further say that Elizabeth had no notice of the claim of the plaintiffs, or any of them, to be owners of any part of the premises aforesaid until after the filing of the bill on April 9, 1878; and from that time until the decree thereon she did not know or understand what the plaintiffs were or would be entitled to under the same.

The defendants contend that the bill cannot be maintained,—1. Because the plaintiffs have a plain, adequate, and complete remedy at law, to wit, an action of trespass for mesne profits.  2. Because the statute, *c.* 209, *s.* 1, giving the court equity powers, applies to tenants in common only while the tenancy in common exists, and not where it has been severed and ceased.  3. Because the equity and claim set up in this bill were considered and included in the decree and judgment rendered on November 16, 1880.  4. If the bill can be maintained, the plaintiffs can recover only the income, rents, and profits of the three eighth parts set off to them by the decree of partition, and only from November 16, 1880, or September 9, 1878.  5. If the bill can be maintained for three eighth parts of the income of the whole farm, the plaintiffs can recover

only from the time of the final decree, November 16, 1880, or from the time of filing their bill of September 9, 1878.

*J. S. H. Frink* and *C. Page*, for the plaintiffs.

*J. W. Emery*, for the defendants.

CLARK, J. The bill can be maintained. Equity jurisdiction extends to matters of account where discovery is sought, and to the adjustment and apportionment of rents and profits between tenants in common. G. L., c. 209, s. 1. And equity will not be ousted of its jurisdiction because the courts of law have adopted equitable principles. *Heath* v. *Derry Bank*, 44 N. H. 174; *Walker* v. *Cheever*, 35 N. H. 339.

It appears that neither John G. Berry in his lifetime, nor the plaintiffs after his decease, ever demanded the possession of one half or any portion of the farm, or made any claim to a share of the income before the filing of the bill in the action *Page* v. *Whidden*, September 9, 1878. There is no evidence that John G. Berry or the plaintiffs, prior to that time, were deprived of the occupation of their share of the farm or excluded from it, or that the occupation of the farm by the defendants was against the will and without the consent of the plaintiffs; or that there was any understanding that the defendants should account for the profits; nor does it appear that the defendants had received any sum in money, as rent or income, beyond their share, for which they should account to the plaintiffs. One tenant in common cannot make his own omission to occupy the joint estate a ground of action against his cotenant; and the plaintiffs are not entitled, upon the facts stated in the bill, to a share of the income of the farm prior to September 9, 1878. *Webster* v. *Calef*, 47 N. H. 289; *Badger* v. *Holmes*, 6 Gray 118; *Peck* v. *Carpenter*, 7 Gray 283.

The filing of the bill in the action *Page* v. *Whidden*, September 9, 1878, was a demand of possession of a share of the farm; and from that date the occupation of the entire estate by the defendants was against the will and without the consent of the plaintiffs, and the plaintiffs were entitled to a proportionate share of the income. The decree in *Page* v. *Whidden* is a bar to any claim in this action for rents or income accruing prior to the date of that decree, November 16, 1880, because there might have been an accounting and recovery therefor in that action. *Ashuelot R. R.* v. *Cheshire R. R.*, 59 N. H. 409. If no such accounting and recovery were had, the plaintiffs, at the trial term, may apply to bring forward that action, vacate the decree, and amend so as to recover for income from September 9, 1878, to November 16, 1880. In this action the plaintiffs are entitled to a decree for three eighth parts of the income of the farm from November 16, 1880.

*Case discharged.*

BLODGETT, J., did not sit: the others concurred.